UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NAHSHON JACKSON, 95A2578,

                              Plaintiff,

        -v-                                                                   DECISION AND ORDER

GLENN S. GOORD, et al.,                                        06-CV-6172 CJS

                              Defendants.

_____

APPEARANCES

For Plaintiff:            Nahshon Jackson, *pro se*
                              95-A-2578
                              Great Meadow Correctional Facility
                              Box 51
                              Comstock, New York 12821-0051

For Defendants:       Gary M. Levine, A.A.G.
                              New York State Attorney General's Office
                              144 Exchange Boulevard, Suite 200
                              Rochester, New York 14614

INTRODUCTION

     This is an action pursuant to 42 U.S.C. § 1983, in which Plaintiff, a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that Defendants, who are all employees of DOCCS, violated his federal constitutional rights. In 2010, the parties filed competing motions for summary judgment. (Docket Nos. [#27] & [#37]). On October 12, 2011, the Court issued a thirty-nine page Decision and Order [#42], which dismissed all of Plaintiff's claims except a retaliation claim against defendants James Conway ("Conway"), Randy James ("James") and Mark Norcross ("Norcross"). Now before the Court are the

following motions: 1) a motion [#45] by Conway, James and Norcross for leave to file a supplemental summary judgment motion; 2) a motion [#46] by Plaintiff for judgment under Rule 54(b); and 3) a motion [#47] by Plaintiff for appointment of counsel. The applications are denied.

BACKGROUND

The facts of this case were set forth in exhaustive detail in the aforementioned Decision and Order [#42], and need not be repeated here. It is sufficient to note that this case arises from incidents that occurred while Plaintiff was housed at Attica Correctional Facility ("Attica") in 2003 and 2004. At that time, Conway was the Superintendent at Attica, James was a Deputy Superintendent, and Norcross was a Corrections Sergeant. Between October 2003 and May 2004, Plaintiff filed several inmate grievances against staff at Attica. On May 1, 2004, Plaintiff was elected by his fellow inmates to serve as an inmate representative on Attica's Inmate Grievance Review Committee ("IGRC").[1] Shortly after these events, Attica staff issued Plaintiff several misbehavior reports. Plaintiff maintains that the misbehavior reports were false and were issued in retaliation for his grievances and his election to the IGRC.

On March 27, 2006, Plaintiff commenced this action asserting a variety of claims, including a claim for retaliation against Conway, James and Norcross. On January 6, 2010, following the completion of pretrial discovery, Defendants filed a motion [#27] for summary judgment. As part of that motion, Conway, James and Norcross argued that

---

[1]"The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chairperson (who may be an inmate, staff member, or volunteer)." *Tompkins v. Beane*, Civ. No. 9:10–CV–1200 (LEK/RFT), 2012 WL 3082574 at *4, n. 5 (N.D.N.Y. Jun. 12, 2012) (citing N.Y. Comp.Codes R. & Regs. tit. 7, § 701.4).

the retaliation claim against them should be dismissed for lack of evidence. By Decision and Order [#42] issued on October 12, 2011, the Court granted summary judgment for Defendants as to all claims, except the retaliation claim against Conway, James and Norcross. In denying summary judgment as to that claim, the Court wrote:

> Plaintiff . . . alleges that Norcross, James, and Conway retaliated against him after he filed grievances, including an inmate grievance on or about May 9, 200[4], in which he complained that officers from A Block had searched him in a disrespectful manner and denied him recreation for no reason. In addition to that protected activity, Plaintiff further alleges that these Defendants retaliated against him because he was elected as an inmate representative to the Inmate Grievance Panel. Moreover, Plaintiff alleges that because of this protected activity, Norcross, James and Conway conspired to retaliate against him, by filing false misbehavior reports against him, charging him with telephone violations, drug use, and possession of ACT materials. More specifically, he contends that within one week of filing a grievance against A Block officers, and of being elected to the Inmate Grievance Panel, he was transferred to A Block without explanation, and then hit with a series of false misbehavior reports. He denies that he used marijuana. He further denies that he possessed ACT materials in June 2004, and contends that such materials were actually confiscated during his cell search on September 26, 2003, and then retained until they could be used to retaliate against him.[2] Consequently, the evidence upon which he relies to establish a causal nexus is the temporal proximity between the protected activity and the misbehavior reports, and his testimony that the misbehavior reports were false.
>
> In moving for summary judgment on these claims, Defendants maintain

---

[2]On this point, the Court understands Plaintiff to be indicating that the ACT materials for which he was charged in June 2004 were the same materials for which he was charged in September 2003. The Court further understands him to be alleging that although the ACT materials were purportedly mailed out of the facility by staff after his October 2003 conviction was reversed, they were actually retained and then used to file a false, retaliatory misbehavior report against him in June 2004. See, Pl. Memo of Law [#37] at p. 10 ("[T]he ACT material had been confiscated by Fleckenstein on 9/26/03 and delivered to Norcross. The ACT material was being used *again* by Norcross for the purpose of arbitrarily administering disciplinary actions against Plaintiff.") (emphasis added, citation omitted).

3

that there is "no evidence" of retaliation. *See*, Def. Memo at 20-22. On this point, Defendants rely on Plaintiff's deposition testimony, wherein he indicated that none of the Defendants expressly told him that they were retaliating against him. *Id*. at 21. Otherwise, Defendant's argument on this point is fairly brief and conclusory:

> [T]here is no evidence that any defendant retaliated against plaintiff by the implementation of the telephone, urinalysis and search policies. The policies were imposed on all inmates in the facility. There is no evidence that anything done was the result of retaliation. The retaliation claim should be dismissed.

*Id*. at 22. <u>Notably, Defendants did not submit affidavits from Conway or Norcross, and although they did submit an affidavit from James, it does not directly address the retaliation claims.</u>

***

Here, Plaintiff has come forward with evidence that he engaged in protected activity, and that Defendants took adverse actions against him. The issue before the Court is whether Plaintiff has come forward with sufficient evidence of a causal connection between the protected speech and the adverse actions. On this point, it is clear that temporal proximity between protected activity and disciplinary action "may serve as circumstantial evidence of retaliation." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). The Court is mindful that such circumstantial evidence, without more, may not be enough to defeat summary judgment on a prisoner retaliation claim. *Id*. at 873. On the other hand, where circumstantial evidence of retaliation is "sufficiently compelling, direct evidence is not invariably required." *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003). <u>In this case, to establish the required causal nexus, Plaintiff relies primarily on the close temporal proximity between the protected activity and the adverse action, as well as his contention that he was innocent of disciplinary charges. Such evidence does not strongly establish causal nexus. On the other hand, Defendants' motion on this</u>

> point is weak, and does not directly address Plaintiff's claim.³  Accordingly,
> the Court finds that there are issues of fact that preclude summary
> judgment on the retaliation claim against Conway, James and Norcross.

Decision and Order [#42] at pp. 29-32 (emphasis added).

Following the Court's ruling, on February 15, 2012, Defendants' counsel filed the subject motion [#45] for leave to file a supplemental summary judgment motion on behalf of Conway, James and Norcross, to address the "weakness" that the Court referred to in its decision.  Defendants made that request because they had already filed a summary judgment motion, and because the court-ordered deadline for filing dispositive motions had expired on January 10, 2010. *See*, Amended Scheduling Order [#25].  Defendants indicate that if the Court gives them permission to file a second summary judgment motion, the motion will include affidavits from Conway, James and Norcross addressing the retaliation claim.

On March 12, 2012, Plaintiff filed the subject motion [#46], requesting entry of judgment under FRCP 54(b) on the dismissed claims.  In that regard, Plaintiff asks the Court to enter final judgment in favor of the defendants who were dismissed from the action pursuant to the Decision and Order [#42] granting summary judgment to them, so that he can file an immediate appeal.  In support of that request, Plaintiff contends that the passage of time between the alleged constitutional violations and the likely trial of this action makes it appropriate to enter final judgment as to the dismissed claims.  In the alternative, Plaintiff asks the Court to reconsider its ruling and "reinstate" the

---

³See footnote 20 above.  The Court also observes that after Plaintiff filed his response to Defendants' motion, Defendants did not file a reply, even though the Court had already granted permission for them to do so. *See*, Amended Motion Scheduling Order [#35].

dismissed claims. And in fact, Plaintiff's motion [#46] consists primarily of a restatement of his arguments as to why summary judgment should not have been granted to the aforementioned defendants. Plaintiff's motion [#46] also contains his arguments in opposition to Defendants' request for leave to file a supplemental summary judgment motion.

On April 17, 2013, Plaintiff filed the subject motion [#47] for appointment of counsel to assist him with the trial or settlement of this action. In that regard, Plaintiff states that he made a settlement demand to Defendants' counsel, in the amount of $75,000.00, which was ignored, which leads him to believe that "the Attorney General [will not] accept any settlement officers from a prisoner unless [the prisoner] is represented by an attorney." Plaintiff further states that although his case has merit, he has not been able to retain an attorney.

DISCUSSION

*Plaintiff's Motion for Appointment of Counsel*

At the outset, Plaintiff's application for appointment of counsel [#47] is denied. The Court has considered the facts of this case in light of the well-settled principles of law regarding motions for appointment of counsel by indigent plaintiffs, *see*, *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) and *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), and finds that appointment of counsel is not warranted. The legal and factual issues presented here are not complicated, and Plaintiff has done a very capable job of representing himself throughout this litigation. To the extent that Plaintiff believes that the Attorney General's office does not negotiate

6

settlements with *pro se* inmates, he is mistaken. Presumably, Defendants' counsel did not respond to Plaintiff's $75,000.00 settlement demand because he did think that it was reasonable.

*Plaintiff's Motion for Final Judgment on the Dismissed Claims*

Plaintiff's request for immediate judgment on the dismissed claims is also denied. Regarding this application, "there is a historic federal policy against piecemeal appeals," and "entry of a final judgment is generally appropriate only after all claims have been adjudicated." *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011) (citations and internal quotation marks omitted). FRCP 54(b) provides an exception to that general rule. *Id*. Rule 54(b) states, in pertinent part, that

> [w]hen an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

FRCP 54(b) (West 2013); *see also, Information Resources, Inc. v. Dun and Bradstreet Corp.*, 294 F.3d 447, 451 (2d Cir. 2002) ("For a proper entry of partial final judgment under Rule 54(b), three requirements must be satisfied: (1) [M]ultiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make an express determination that there is no just reason for delay and expressly direct the clerk to enter judgment.") (citations and internal quotation marks omitted).

Such relief should be granted "sparingly." *Novick v. AXA Network, LLC*, 642 F.3d at 310. "To be appropriate, a Rule 54(b) certification must take account of both the policy against piecemeal appeals and the equities between or among the parties." *Id*. Moreover,

> [a] district court generally should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated[, since] [i]t does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case in successive appeals from successive decisions on interrelated issues.

*Id*. at p. 311 (citations and internal quotation marks omitted). "[I]t is incumbent upon a party seeking immediate relief in the form of a Rule 54(b) judgment to show not only that the issues are sufficiently separable to avoid judicial inefficiency but also that the equities favor entry of such a judgment." *Id*. at p. 314.

In the instant case, Plaintiff has not made the required showing under Rule 54(b). Moreover, it would be unwise to allow separate appeals in this case, since, although there are many claims and parties, the underlying factual allegations are intertwined. As for his alternative request for reconsideration of the Court's Decision and Order [#42] dismissing most of his claims, Plaintiff has similarly failed to make the required showing. *See, Secured Systems Technology, Inc. v. Frank Lill & Son, Inc.*, No. 08–CV–6256 CJS, 2011 WL 1599638 at * 1 (W.D.N.Y. Apr. 27, 2011) (Discussing that reconsideration may be appropriate where the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion, or where: (1) there is an intervening change in the

8

controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice.) (citations omitted).

*Defendants' Motion for Leave to File a Second Summary Judgment Motion*

Where, as here, a party seeks leave to do something beyond the deadline set by the Court in a scheduling order, he must satisfy FRCP 16(b)(4), which states: "A schedule may be modified only for good cause and with the judge's consent." With regard to "good cause," the primary consideration is the diligence of the moving party, but the Court may consider additional factors, such as potential prejudice to the non-moving party. *See, e.g., Woodworth v. Erie Ins. Co.*, No. 05–CV–6344 CJS, 2009 WL 3671930 at *2-3 (W.D.N.Y. Oct. 29, 2009).

Here, Conway, James and Norcross contend that they have shown "excusable neglect":

> The need for the second summary judgment motion is due to defendants' miscalculation as to what was needed to obtain summary judgment. Once the summary judgment decision was rendered, defendants acted promptly to try to resubmit to address the deficiencies in the original motion. Counsel's inadvertence or mistake should not bar a new motion.

Def. Memo of Law [#45-2] at p. 2. However, the Court finds that Defendants have not made a sufficiently compelling argument to support the extraordinary relief that they seek. On that point, there is a difference between merely bringing a motion after a deadline, and bringing a second or successive dispositive motion to correct deficiencies in the original motion. It is generally recognized that parties should not be allowed to bring the latter type of motion:

9

> [N]o federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment; rather, a successive Rule 56 motion may be filed only with the district court's authorization. *See, e.g., Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir.1990) ("Two motions for summary judgment may be ruled upon in the same case, particularly when ... the district judge allows a second summary judgment motion."); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y.2004) (explaining that courts do "not approve in general the piecemeal consideration of successive motions for summary judgment because parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised") (citations omitted); *Sanders v. York*, 2008 WL 1925232, *4 (E.D.Cal. Apr. 30, 2008) ("The court will not allow defendants another 'bite at the apple' to file a second summary judgment motion addressing the merits of the remaining claims ... as it would waste court resources and delay resolution of this action"); *McCabe v. Bailey*, 2008 WL 1818527, *1 (N.D.Iowa Apr. 4, 2008) (enforcing "one- summary- judgment- motion- per- party" rule "to conserve scarce judicial resources, prevent repetitive motions and forestall potential abuse"). The undersigned has observed the importance of not allowing parties to "treat their initial summary judgment motions as a 'dry run' which they would have an opportunity to redo or supplement—at considerable additional cost to opposing parties and at a considerable drain to scarce judicial resources—via a new Rule 56 motion later on to correct any deficiencies identified by opposing counsel or the court in processing the initial motion." *Middlegate Development, LLP v. Beede*, 2011 WL 3475474, *11 n. 26 (S.D.Ala. Aug. 9, 2011).

*Essex Ins. Co. v. Foley*, 827 F.Supp.2d 1326, 1329, n. 2 (S.D.Ala. 2011). Accordingly, Defendants' request is denied.

## CONCLUSION

The motion [#45] by Conway, James and Norcross to file a supplemental summary judgment motion is denied. Plaintiff's motion [#46] for judgment under Rule 54(b), or, in the alternative, for reconsideration, and his motion [#47] for appointment of

counsel are also both denied. The retaliation claim against Conway, James and Norcross may proceed to trial. The Court will issue a separate order scheduling this matter for trial.

Dated:   April 10, 2013
         Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge